COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Causey and Friedman
Argued at Norfolk, Virginia

**UNPUBLISHED**

CY BAILEY, SR.

                                                   MEMORANDUM OPINION[*] BY

v.        Record No. 1366-21-1        JUDGE FRANK K. FRIEDMAN
                                                   MAY 30, 2023

CITY OF NORFOLK DEPARTMENT
  OF HUMAN SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

(Romy L. Radin; Radin Law, PLC, on brief), for appellant.
Appellant submitting on brief.

Heather L. Kelley, Deputy City Attorney (Bernard Pishko, City
Attorney; Robin L. Tolerton, Guardian ad litem for the minor child;
Robin L. Tolerton, P.C., on brief), for appellee.


Cy Bailey, Sr. (father) appeals the circuit court's orders approving the foster care goal of

adoption/relative placement and terminating his parental rights. Father argues that the circuit court

violated his due process rights by approving the foster care goal of adoption/relative placement

when the goal of relative placement already had been achieved. Father further contends that the

circuit court erred by terminating his parental rights under Code § 16.1-283(B) because the City of

Norfolk Department of Human Services (the Department) "failed to produce any evidence that the

child had been neglected or abused, much less that said alleged neglect or abuse presented a serious

and substantial threat to the child's life, health or development." Finally, father asserts that the

circuit court erred by terminating his parental rights under Code § 16.1-283(C)(1) and (C)(2)

because his "mental illness" was good cause for his failure to plan for the child and to remedy

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

substantially the conditions that required the child's continued placement in foster care. We find no error and affirm the circuit court's judgment.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)). Here, the Department was the prevailing party, so we review the evidence in the light most favorable to it.

Father and Crystal Arias (mother) are the biological parents to the child who is the subject of this appeal.[2] Father and mother lived together and had a history of mental illness. While pregnant with the child, mother was hospitalized for psychiatric care. After her release, mother failed to comply with her medication plan.

One day after the child's birth in July 2019, the Department received an allegation of "physical abuse, threat of harm" to the child due to concerns about the mother's mental health. Initially, the Department established a safety plan and obtained a preliminary protective order to ensure that mother had supervised contact with the child. While working with the parents, the Department became increasingly concerned that father also was "displaying behaviors that were consistent with a decreased mental health." The Department learned that father was in

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues father has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] The City of Norfolk Juvenile and Domestic Relations District Court terminated mother's parental rights, and she did not appeal.

psychiatric treatment with "community-based services."[3] In addition, the Department learned that father and mother had a history of domestic violence, which they denied. Despite the Department's efforts to offer them services, the parents resisted the Department's help.

In September 2019, approximately six weeks after the child's birth, the Department removed the child from the parents' care and placed him briefly with a maternal relative. Within a few days, the relative indicated that she was unable to care for the child "long term," but the relative indicated that an aunt was able to care for the child. On October 11, 2019, custody was transferred to that aunt.[4] Thereafter, the aunt became the child's foster parent.

On January 31, 2020, the City of Norfolk Juvenile and Domestic Relations District Court (JDR court) adjudicated that the child was "at risk of neglect," and entered a child protective order, requiring the parents to have supervised contact and comply with mental health treatment.[5] On April 24, 2020, the JDR court entered a dispositional order, which father did not appeal.

After the child entered foster care, the Department continued to offer services to the family. The Department required father to demonstrate "mental health stability," participate in individual therapy, and comply with medication management. The Department referred father to reunification services, parenting education classes, substance abuse services, domestic violence counseling, and anger management therapy. Impact Mental Health provided father with reunification services, including parenting education, housing, therapy, employment, and supervised visitation. But father was "not cooperative" with the reunification services. From

---

[3] Father had "matched the criteria" for schizoaffective disorder, bipolar type, and had been diagnosed with antisocial personality disorder and alcohol use disorder.

[4] The aunt had already adopted two of mother's older children.

[5] The JDR court previously ordered the parents to participate in parental capacity evaluations.

July 2019 through February 2020, the supervisor at Impact Mental Health noticed a "very steep decline" in father's mental health, as father became less coherent and more aggressive.

The Department had referred father to a psychologist for a parental capacity evaluation. Father went to two appointments but refused to participate in the psychological testing.[6] Notwithstanding attempts to reschedule appointments to give father "a second opportunity to complete the evaluation," father failed to cooperate. Thus, the psychologist was unable to offer any "diagnostic formations" or opinions on father's parental capacity.

In addition to its other requirements, the Department required father to "refrain from any illegal activity." Father had an extensive criminal history, including convictions for possession of a concealed weapon, possession of a firearm by a convicted felon, possession of burglary tools, and several probation revocations. In 2021, father faced another probation revocation hearing and had been arrested for failure to appear and violation of a protective order.

The Department also was concerned about father's housing stability, especially after he became homeless while the child was in foster care. The Department had called him to ask for an address, and he refused to provide the information.[7] He subsequently provided the Department with an address, but nobody responded at the house. The Department then received a different address in Portsmouth for father.

Throughout its involvement with the family, the Department offered in-person and virtual supervised visits to father. He attended some of the visits, but not all, and some visits had to end

---

[6] Father informed the psychologist that he had been diagnosed with schizoaffective disorder and attention deficit hyperactivity disorder and had been taking psychiatric medicine since 2016. He also acknowledged "a history of excessive alcohol abuse."

[7] The Department attempted to maintain communication with father, but there were times when he did not answer the phone or return phone calls.

early due to father's "inappropriate language and behavior."[8]  In May 2021, after months of virtual visits, the Department attempted an in-person visit, and although the child appeared for the visit, mother and father did not.  Father did not explain his absence.  In June 2021, the Department offered father another virtual visit, which was his last visit.  Although the Department tried to schedule additional visits, father did not respond to its phone calls or letters.

On June 11, 2021, the JDR court terminated father's parental rights and approved the foster care goal of adoption/relative placement.  Father appealed to the circuit court.

On September 29, 2021, the parties appeared before the circuit court for a de novo hearing on the question of the foster care goals and father's parental rights.  The Department presented evidence of father's mental health history, including two in-patient psychiatric hospitalizations in April and July 2021.  The Department also presented evidence that the child continued to live with his aunt, uncle, and half-siblings.  The child had become "very bonded to both of his siblings and seeks comfort from them on a daily basis."

The Department argued that it was in the child's best interests to terminate father's parental rights and approve the foster care goal of adoption, so that the child's aunt could adopt him.  The Department acknowledged that the concurrent goal was relative placement, which had been met because the child was living with his aunt.  The Department explained, however, that the goal was permanency, and relative placement was not a "permanent goal" for the child.  The Department remained concerned about the child's safety, as well as the aunt's safety, considering father's aggression and history of domestic violence.  Father and mother had made comments "about going to get" the child from the aunt.[9]  Accordingly, the Department recommended adoption and termination of father's parental rights.

---

[8] Father had verbally threatened others and argued in front of the child.

[9] Due to safety concerns, the Department had not shared the child's address with father.

Father did not offer any evidence. The child's guardian ad litem reported that the child was in "very good health" and "very happy." After hearing the parties' arguments, the circuit court found that "there was a serious and substantial threat to this child by reason of the living conditions, the untreated mental health conditions, the very unstable situations being realized by both the parents, . . . [and] the reasonable likelihood that the conditions could [not] be substantially corrected or eliminated." The circuit court also found that father had, "without good cause, failed to maintain continuing contact and to provide for the future of the child." The circuit court expressed "shock[ ]" that father did not respond to the Department and other workers who were trying to reunify him with the child. The circuit court further found that father had not complied with the Department's requirements because he did not appear regularly for visitation and did not complete the parental capacity evaluation.

On September 29, 2021, the circuit court entered orders approving the foster care goal of adoption/relative placement and terminating father's parental rights to the child under Code § 16.1-283(B), (C)(1), and (C)(2). On October 4, 2021, the circuit court issued a letter questioning its ruling under Code § 16.1-283(B) and requested that the Department submit "any authority [that] supports its position that termination is warranted under Code § 16.1-283(B)." The circuit court also provided father with the opportunity to provide authority in support of his position, but he did not do so. The Department submitted a brief, arguing that clear and convincing evidence supported the termination of father's parental rights under Code § 16.1-283(B). Father did not file a response to the Department's brief. On October 19, 2021, the circuit court issued a letter opinion holding that "termination was properly approved under both Virginia Code § 16.1-283(B) and (C)." Father now appeals.

ANALYSIS

I.  Foster care goal of adoption/relative placement

On appeal, father assigned error to the circuit court's purported violation of his due process rights when it approved the foster care goal of adoption/relative placement even though the goal of relative placement had been met.  In his brief, however, father did not explain how the circuit court violated his due process rights or provide any authority addressing his due process claim.  *See* Rule 5A:20(e) (requiring the opening brief to include "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error").  "Failure to adequately brief an assignment of error is considered a waiver." *Muhammad v. Commonwealth*, 269 Va. 451, 478 (2005).  Therefore, we find that father waived his due process argument.

Father further argues that the trial court erred by approving the concurrent foster care plan goals of adoption and relative placement when the child had already been placed in relative foster care.  However, if father's argument is followed to its logical conclusion, a child who has been placed with a relative could never be adopted by that relative.  As the Department argued below and on appeal, this stance would effectively eliminate the possibility of ever achieving permanency for a child whose parents were unable to be reunified with that child.  We take this opportunity to note that relative adoption is both permissible and proper under appropriate circumstances.  The trial court did not err in approving the foster care goal of adoption here.

II.  Termination of parental rights

Father also challenges the circuit court's orders terminating his parental rights.  "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (alteration in original)

(quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

The circuit court terminated father's parental rights under Code § 16.1-283(C)(2), which authorizes a court to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi*, 69 Va. App. at 552 (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)).

Father argues that the circuit court erred by terminating his parental rights under Code § 16.1-283(C)(2) because the "overwhelming evidence" of his "mental illness" was "good cause" for his inability to remedy substantially the conditions that required the child's continued placement in foster care. This Court previously has held that there is no good cause under Code § 16.1-283(C)(2) when a parent has such a severe "mental deficiency . . . that there is no reasonable expectation that such parent will be able within a reasonable period of time befitting the child's best interests to undertake responsibility for the care needed by the child in accordance with the child's age and stage of development." *Richmond Dep't of Soc. Servs. v. L.P.*, 35 Va. App. 573, 585 (2001). Upon review, we find that this is such a case.

The Department presented extensive evidence of father's mental health history. The Department became concerned about father's mental health and his ability to parent the child shortly after its involvement with the family. Father had been receiving psychiatric treatment with community-based services. He had been diagnosed with schizoaffective disorder, bipolar type, antisocial personality disorder, and ADHD, and he was prescribed psychiatric medications. Father was not always compliant with his medication, which elevated his symptoms of paranoia and delusions.

At the preliminary removal hearing on September 18, 2019, the JDR court ordered father to complete a parental capacity evaluation. At subsequent hearings, the JDR court reiterated its order for father to complete the parental capacity evaluation and comply with mental health treatment. In its foster care plans, the Department stressed the need for father to complete the parental capacity evaluation. Despite multiple opportunities to complete the required evaluation, father refused to undertake the necessary testing. The circuit court found that father had not cooperated with the Department and "the folks who were trying to reunify him with the child."

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 322 (2013) (alteration in original) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)). By the time of the circuit court hearing, the child had been in foster care for two years, and father was not in a position to care for him. The circuit court did not err in finding that father, without good cause, had failed to remedy substantially the conditions that led to the child's continued placement in foster care and the evidence was sufficient to terminate his parental rights under Code § 16.1-283(C)(2).

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court and, if we so find, need not address the other grounds." *Kilby v. Culpeper Cnty. Dep't of Soc. Servs.*, 55 Va. App. 106, 108 n.1 (2009); *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Because we find that the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2), we, therefore, do not need to reach the question of whether father's parental rights should also have been terminated under Code § 16.1-283(B) and (C)(1).

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed*.